CENTRAL ILLINOIS LIGHT COMPANY, an Illinois corporation; Central Illinois Public Service Company, an Illinois corporation; Commonwealth Edison Company, an Illinois corporation; Illinois Power Company, an Illinois corporation; Interstate Power Company, a Delaware corporation; Iowa-Illinois Gas and Electric Company, an Illinois corporation; Northern Illinois Gas Company, an Illinois corporation; and the Peoples Gas Light & Coke Company, an Illinois corporation, Plaintiffs,

v.

CITIZENS UTILITY BOARD; James E. Ryan, State's Attorney of DuPage County; Richard M. Daley, State's Attorney of Cook County; and Neil F. Hartigan, Illinois Attorney General, Defendants.

No. 86 C 1495.

United States District Court, N.D. Illinois, E.D.

Oct. 15, 1986.

Brown & Platt, David J. Rosso, Boyd J. Springer, Karl B. Anderson, Paul F. Hanzlik, Sara J. Read, Isham, Lincoln & Beale, Clement E. Springer, Jr., Edward J. Griffin, Defrees & Fiske, Owen E. MacBride, Edward J. Finn, Schiff, Hardin & Waite, Chicago, Ill., Edward J. Hartman, Davenport, Iowa, James Hinchliff, Thomas M. Patrick, Chicago, Ill., for plaintiffs.

J. Patrick Jaeger, Asst. State's Atty., Wheaton, Ill., John W. McCaffrey, Mark N. Jason, Rosalyn Kaplan, Asst. Attys. Gen., Patrick N. Giordano, Jack A. Pace, Asst. State's Atty., Chicago, Ill., for defendants. Robert J. Vollen, Schwartz & Freeman, Steven F. Pflaum, O'Donnell & Gordon, Alex Elson, Rosenthal & Schanfield, P.C., Geoffrey R. Stone, Professor of Law, University of Chicago Law School, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

In this suit, plaintiffs challenge Sections 9 and 10 of Illinois' Citizens Utility Board Act ("CUB Act"), Ill.Rev.Stat. ch. 111⅔, ¶¶ 909, 910 (1986), as unconstitutional under both the United States and Illinois Constitutions. Plaintiffs seek declaratory and injunctive relief against enforcement or attempted enforcement of Sections 9 and 10 of the CUB Act. This matter is now before the court on plaintiffs' motion for summary judgment and defendants' motion for judgment on the pleadings. For the reasons set forth below, the court grants plaintiffs' motion for summary judgment, and denies defendants' motion for judgment on the pleadings.

### I. Facts

#### A. The Parties

Plaintiffs are all investor-owned utility companies in the business of furnishing electric and/or gas utility service to the public in Illinois. Each plaintiff is a Class A utility within the meaning of the CUB Act.[1]

Kenneth J. Jurek, Douglas A. Poe, Stephen J. Mattson, Rosanne J. Faraci, Mayer,

---

1. Section 3(4) of the CUB Act provides:

"Class A utility" means any gas, electric or water public utility with annual total gross

Intervening plaintiff Illinois Telephone Association, Inc. ("ITA") is a non-profit corporation which represents the interests of the telephone system and certain telephone companies operating in Illinois.[2] Its membership includes the following Class A utilities: ALLTEL Illinois, Inc.; Central Telephone Company of Illinois; Continental Telephone Company of Illinois; General Telephone Company of Illinois; Geneseo Telephone Company; Harrisonville Telephone Company; Illinois Consolidated Telephone Company; Inland Telephone Company; and Midland Telephone Company.

Defendant Citizens Utility Board ("CUB") is a non-profit corporation which the Illinois legislature created in the CUB Act.

Defendants James E. Ryan, State's Attorney of DuPage County, Richard M. Daley, State's Attorney of Cook County, and Neil F. Hartigan, Illinois Attorney General, are vested with the responsibility of enforcing the CUB Act in their respective jurisdictions. *See* Ill.Rev.Stat. ch. 14, ¶¶ 4, 5 (1986).

## B. The CUB Act

The Illinois legislature created CUB through enactment of the CUB Act in 1983. CUB is a "nonprofit public body corporate and politic." *See* Section 4 of the CUB Act. The purpose of CUB is "to promote the health, welfare and prosperity" of all Illinois residential utility consumers by representing those consumers before state and federal agencies and courts, and by educating such consumers on utility service prices and methods and benefits of energy conservation. *See* Section 2 of the CUB Act. Residential utility consumers became CUB members by voluntarily submitting membership applications, and contributing dues, to CUB. CUB sustains itself through membership dues alone; the CUB Act does

not provide for funding from the state or utilities.

Section 9 of the CUB Act authorizes CUB to solicit membership, and membership dues through envelope enclosures or statements for postcards mailed by public utilities along with their regular billings. Section 9 provides in pertinent part:

§ 9. Mailing procedure. (1) In this Section "enclosure" means a card, leaflet, envelope or combination thereof furnished by the corporation under this Section and "statement" means the text of material submitted by the corporation to be printed on the face of a postcard billing or to be included in any enclosure as defined in Section 9. To accomplish its powers and duties under Section 5, the corporation, subject to the following limitations, may prepare and furnish to any investor-owned Class A public utility an enclosure or a statement to be printed on the face of a postcard billing.

(a) An enclosure or statement furnished by the corporation under this Section may not be submitted to the utility less than 21 calendar days in advance of the date of the public utility's periodic customer billing. The utility shall include such enclosure or statement in or on its next periodic customer billing.

\*   \*   \*   \*   \*   \*

(c) An enclosure furnished by the corporation under this Section shall be limited to informing the reader of the purpose, nature and activities of the corporation as set forth in this Act and informing the reader that the utility consumer billed may become a member in the corporation, maintain membership in the corporation and contribute money to the corporation directly. The enclosure may not have the character of a bill, state-

---

operating revenues of $2.5 million or more or any telephone public utility with annual total gross operating revenues of $1,600,000 or more on the effective date of this Act.
The mailing requirements of Section 9 of the CUB Act, which plaintiffs here challenge, apply only to Class A utility companies.

**2.** This court granted ITA's motion for leave to intervene as a plaintiff on May 5, 1986. ITA has standing to bring this suit as the representative of its Class A utility members. *See International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America v. Brock,* — U.S. —, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1986).

ment or account. Information may include a membership application form.

(d) The corporation may not furnish any enclosure or statement to a public utility under this Section unless the enclosure or statement has been approved by the Illinois Commerce Commission under subsection (3).

\* \* \* \* \* \*

(2)(a) Except as provided under paragraph (b), any public utility furnished with an enclosure or statement under subsection (1) shall print or otherwise include or enclose such enclosure or statement within, upon or attached to the next periodic customer billing which the public utility mails or delivers to any consumer.

(b) No public utility may be required to include more than 4 enclosures or statements annually under subsection (1) in its periodic billing.

(3) Prior to furnishing a statement or enclosure to a utility under subsection (1), the corporation shall submit the enclosure to the Illinois Commerce Commission. The Illinois Commerce Commission shall approve the enclosure or statement if it determines that the enclosure (1) is not false or misleading and (b) satisfies the requirements of this Act.

\* \* \* \* \* \*

(5) A dispute arising from the operation of this Section shall be resolved by negotiations between the corporation and the public utility if possible, or by a civil proceeding in circuit court.

Ill.Rev.Stat. ch. 111⅔, ¶ 909 (footnotes omitted).

Section 9 requires CUB to proceed as follows in order to distribute its enclosures in a utility's billing envelope: (1) CUB drafts an enclosure "informing the reader of the purpose, nature and activities of [CUB]" or soliciting membership in, and/or contributions to, CUB; (2) CUB submits the enclosure to the Illinois Commerce Commission ("ICC"), which approves the enclosure if it is not false or misleading and it satisfies the requirements of the CUB Act;[3] and (3) CUB submits the approved enclosure to the Class A utility not less than 21 days before the date of the utility's periodic customer billing. A utility so furnished with an enclosure must include the enclosure within its next periodic customer billing, or face the criminal penalties set forth in Section 10 of the CUB Act.[4]

The CUB Act became effective December 1, 1983, and CUB's first distribution of enclosures in utility billings occurred in July, 1984. From July, 1984 to July, 1985, CUB caused 16 million enclosures, and 6 million post card messages, to be included with utility bills. *See* Exhibit "L" to Plain-

---

**3.** Under an ICC Emergency Rule effective May 11, 1984, utilities were able to submit comments to the ICC regarding whether proposed enclosures were false or misleading, and whether enclosures satisfied the requirements of the CUB Act, prior to the ICC's approval of enclosures. 8 Ill.Reg. 7299 (1984). However, the ICC deleted the provision authorizing comments from the utilities when it codified the emergency rules, effective October 7, 1984. 83 Ill.Adm. Code 110.10, 110.30.

Although utilities may no longer submit comments prior to the ICC's decision to approve or disapprove enclosures, and utilities may not request a rehearing of, or appeal, such a decision, Ill.Rev.Stat. ch. 111⅔, ¶¶ 10–113, 10–201 (1986), utilities contending that an enclosure is false or misleading or that an enclosure does not satisfy the requirements of the CUB Act may call for negotiations or file a civil action under Section 9(5) of the CUB Act.

**4.** Section 10 of the CUB Act, Ill.Rev.Stat. ch. 111⅔, ¶ 910, provides:

§ 10. Prohibited Acts. (1) No person may interfere or threaten to interfere with or cause any interference with utility service or with the utility service of or penalize any person who contributes to the corporation or participates in any of its activities, in retribution for such contribution or participation.

(2) No person may act with intent to prevent, interfere with or hinder the activities permitted under this Act.

(3) A person who violates this Section may be fined not more than $1,000. Each such violation shall constitute a separate and continuing violation of this Act. A person who knowingly and wilfully violates this Section may be imprisoned not more than 6 months. Plaintiffs have challenged Section 10 only as applied to Section 9. Accordingly, this court finds Section 10 unconstitutional only as applied to Section 9.

tiffs' Memorandum in Support of Summary Judgment ("Plaintiffs' Memorandum") at 5. All of the plaintiff utilities have had to include CUB enclosures in their billings since the CUB Act became effective. *See* Exhibits "C" through "J" to Plaintiffs' Memorandum. Also, all of intervening plaintiff ITA's Class A utility members identified above have had to include CUB enclosures in their billings. *See* Exhibit "K" to Plaintiffs' Memorandum.

The various CUB enclosures plaintiffs have had to include within their billing envelopes pursuant to Sections 9 and 10 of the CUB Act have stated:

> "WARNING! This utility bill may be hazardous to your budget."

> "FED UP WITH HIGH UTILITY BILLS? Read this message—it's not from the utility company."

> "We don't have to tell you how much your electric, gas and phone bills have increased in recent years. And the sad truth is that there's no end in sight.

> Why? Because the utility companies spend millions—of our consumer dollars—to convince the government to raise our rates.

> So what can you do about it? You can try to pay your bills and hope for the best. Or, **you can join 120,000 of your Illinois neighbors who are fighting back against skyrocketing utility bills and unfair utility companies.**"

> "This Electric Bill is TOO HIGH"

> "What the utilities have done to your electric bill isn't just unfair, IT'S UNBELIEVABLE!"

> "NOW YOU CAN FIGHT BACK. YOU CAN JOIN CUB—A POWERFUL NEW CITIZENS ORGANIZATION THAT WON'T TAKE RATE INCREASES LYING DOWN."

> "Are you FED UP with skyrocketing utility bills? Are you tired of hearing excuses?"

*See* Exhibit "B" to Plaintiffs' Complaint.

## C. The Pacific Gas Decision

In *Pacific Gas & Electric Co. v. Public Utilities Commission of California,* — U.S. ——, 106 S.Ct. 903, 89 L.Ed.2d 1 (1986), the Supreme Court struck down as violative of the First Amendment an order of the California Public Utilities Commission ("CPUC") requiring Pacific Gas & Electric Company ("Pacific Gas") to include in its billing envelopes messages from Toward Utility Rate Normalization ("TURN"), a group representing the interests of residential utility customers. Pacific Gas had for many years distributed along with its bills a newsletter, entitled "Progress," which included political editorials, public interest feature stories, energy conservation tips and information about utility services and bills. *Id.* at 905. TURN intervened in a ratemaking proceeding before the CPUC in 1980, and asked the CPUC to prohibit Pacific Gas from using its billing envelopes to distribute political editorials. TURN argued that utility consumers should not bear the expense of Pacific Gas' political speech.

The CPUC determined that the "extra space" remaining in Pacific Gas' billing envelopes after inclusion of the bill and any required legal notices (but excluding other materials, such as "Progress"), up to such total weight as would not result in additional postage cost, belongs to the ratepayers. *d.* at 906 n. 3. The CPUC then apportioned the "extra space" between Pacific Gas and its customers, by ordering Pacific Gas to allow TURN to utilize the "extra space" four times a year for the next two years. The CPUC selected TURN because TURN represented the interests of a significant group of ratepayers, and TURN had aided the CPUC in performing its regulatory function. Therefore, the ratepayers would benefit from TURN's use of the "extra space" for raising funds and communicating with the ratepayers. The CPUC acknowledged that the purposes of the access order were to offer the public a greater variety of views, *Id.* at 906, 910, and to assist the fund-raising efforts of groups that challenge Pacific Gas in ratemaking proceedings. *Id.* at 910, 922.

The plurality of the Supreme Court found that compelled access to private property, like that ordered by CPUC, impermissibly burdens First Amendment

rights in that it "penalizes the expression of particular points of view and forces speakers to alter their speech to conform with an agenda they do not set." *Id.* at 908. The plurality relied on *Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241, 94 S.Ct. 2831, 41 L.Ed.2d 730 (1974), in which the Court struck down a Florida law providing that, if a newspaper criticized a political candidate's character or record, the candidate could demand that the newspaper print a reply of equal prominence and space. According to the plurality, *Tornillo* establishes that a forced access rule which indirectly restricts speech to certain topics or views, or forces a speaker to respond to the views of others, is unconstitutional.

The CPUC access order indirectly penalizes the expression of particular points of view, the plurality held, because the order discriminates on the basis of the viewpoints of selected speakers. According to the plurality:

> The order does not simply award access to the public at large; rather, it discriminates on the basis of the viewpoints of the selected speakers. *Two* of the acknowledged purposes of the access order are to offer the public a greater variety of views in appellant's billing envelope, *and to assist groups (such as TURN) that challenge appellant in the Commission's ratemaking proceedings in raising funds.* ... Access to the envelopes thus is not content-neutral. The variety of views that the Commission seeks to foster cannot be obtained by including speakers whose speech agrees with appellant's. *Similarly, the perceived need to raise funds to finance participation in ratemaking proceedings exists only where the relevant groups represent interests that diverge from appellant's interests.* Access is limited to persons or groups—such as TURN—who disagree with appellant's views as expressed in Progress *and who oppose appellant in Commission proceedings.*

*Pacific Gas,* 106 S.Ct. at 910 (emphasis added) (citation and footnote omitted). The plurality reasoned that, because the CPUC's access order awards access only to those who disagree with Pacific Gas' views, Pacific Gas must contend with the fact that, whenever it speaks out on an issue, it may be forced to help disseminate hostile views. Pacific Gas " 'might well conclude' that, under these circumstances, 'the safe course is to avoid controversy,' thereby reducing the free flow of information and ideas that the First Amendment seeks to promote." *Id.* at 910 (*quoting Tornillo,* 418 U.S. at 257, 94 S.Ct. at 2839).

The CPUC access order also impermissibly forces Pacific Gas to alter its speech to conform with TURN's agenda, the plurality held. According to the plurality, the order leaves TURN free to use Pacific Gas' billing envelopes to discuss any issue it chooses;[5] therefore, TURN may express views hostile to Pacific Gas, and Pacific Gas may be forced either to appear to agree with TURN's views or to respond. A state may not impose such a burden on a corporation's choice to speak or not to speak, absent a compelling interest. *Pacific Gas,* 106 S.Ct. at 912.

The plurality also found that the access order was not a narrowly tailored means of serving a compelling state interest. California's interest in fair and effective utility regulation may be compelling, the plurality held, but California can serve that interest through means that would not violate Pacific Gas' First Amendment Rights, such as awarding fees and costs in ratemaking proceedings. *Id.* at 913. In addition, the access order fails to promote California's interest in making a variety of views available to utility consumers, for in promoting TURN's views, the order inhibits the expression of Pacific Gas' views. *Id.* at 914.

Finally, the plurality held that the access order is not a permissible time, place or manner regulation, because it is not content-neutral. *Id.*

In reaching its conclusion, the plurality distinguished several of the Court's previ-

---

**5.** *See infra* text at "B."

**1480**

ous cases which CUB relies on in the present case. First, the plurality distinguished *PruneYard Shopping Center v. Robins*, 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980), in which the Court held that a shopping center owner did not have a constitutional right to exclude pamphleteers from an area open to the public. According to the *Pacific Gas* plurality, the compelled access in *PruneYard* did not penalize the expression of particular points of view as did the compelled access in *Pacific Gas:*

> Notably absent from *PruneYard* was any concern that access to this area might affect the shopping center owner's exercise of his own right to speak: the owner did not even allege that he objected to the content of the pamphlets; nor was the access right content-based. *PruneYard* thus does not undercut the proposition that forced associations that burden protected speech are impermissible.

*Pacific Gas*, 106 S.Ct. at 910 (footnote omitted).

The plurality also distinguished cases in which the Court has upheld content-neutral governmental subsidies of speech. *See, e.g., Regan v. Taxation With Representation*, 461 U.S. 540, 103 S.Ct. 1997, 76 L.Ed.2d 129 (1983) (sustaining funding of general election campaign expenses of major party candidates); *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (sustaining tax deductions for contributors to veterans' organizations). Instead of subsidizing speech in a permissible manner, the CPUC order identifies a favored speaker, TURN, based on the identity of the interests that TURN represents, and orders "the speaker's opponent," Pacific Gas, to assist in disseminating TURN's views. *Pacific Gas*, 106 S.Ct. at 911. Since the order does not equally constrain both sides of the debate about utility regu-

lation, it necessarily burdens the expression of the disfavored speaker. *Id.*[6]

In addition, the plurality distinguished *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985). In *Zauderer*, the Court held that Ohio could constitutionally require an attorney to include in a commercial advertisement purely factual and uncontroversial information about the terms under which the attorney's services are available. *Zauderer*, 105 S.Ct. at 2281–83. According to the *Pacific Gas* plurality, *Zauderer* establishes that the State has substantial leeway in determining appropriate information disclosure requirements for businesses; "[n]othing in *Zauderer* suggests, however, that the State is equally free to require corporations to carry the messages of third parties, where the messages themselves are biased against or are expressly contrary to the corporation's views." *Pacific Gas*, 106 S.Ct. at 911 n. 12.

In his concurring opinion, Justice Marshall explained that *Pacific Gas* differs from *PruneYard* in two constitutionally significant respects. *Id.* at 915–16. First, the rule in *PruneYard*, that a shopping center owner could not exclude pamphleteers from public areas, did not permit a markedly greater intrusion onto the owner's private property than that which the owner voluntarily encouraged. Pacific Gas, by contrast, never opened up its billing envelopes for the use of the public. Second, the CPUC order grants TURN a forum at the expense of Pacific Gas' ability to use its property as a forum for the exercise of its own First Amendment rights. The *PruneYard* rule, on the other hand, did not hinder the shopping center owner's ability to use his property for the exercise of his First Amendment rights. Justice Marshall concluded:

> In *PruneYard*, I recognized that the State may generally create or abrogate

---

**6.** In his concurring opinion, Justice Marshall also distinguishes *Regan* and *Buckley:*

> While the interference with appellant's speech is, concededly, very slight, the State's justification—the subsidization of another speaker chosen by the State—is insufficient to sustain

even that minor burden. We have held that a State may use its own resources for subsidization, ... but that interest, standing alone, cannot justify interference with the speech of others.

*Pacific Gas*, 106 S.Ct. at 916 (citations omitted).

rights " 'to attain a permissible legislative object.' " 447 U.S., at 92, 100 S.Ct., at 2046 (*quoting Silver v. Silver,* 280 U.S. 117, 122, 50 S.Ct. 57, 58, 74 L.Ed. 221 (1929)). In the present case, the State has redefined a property right in the extra space in appellant's billing envelope in such a way as to achieve a result—burdening the speech of one party in order to enhance the speech of another—that the First Amendment disallows. In doing so, moreover, it has sanctioned an intrusion onto appellant's property that exceeds the slight incursion permitted in *PruneYard.* Under these circumstances, I believe that the State has crossed the boundary between constitutionally permissible and impermissible redefinitions of private property. *Id.* at 916–17 (citation omitted).[7]

## II. Motions for Summary Judgment and for Judgment on the Pleadings

A court may properly grant a motion for summary judgment only when it appears that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). In determining whether any material facts are in dispute, the court must view all inferences drawn from the record in the light most favorable to the non-moving party. *Bartman v. Allis-Chalmers Corp.,* 799 F.2d 311 (7th Cir.1986).

Similarly, a court may properly grant a motion for judgment on the pleadings when, after the pleadings are closed, the court determines that there is no genuine issue of material fact, and the moving party is clearly entitled to judgment. Fed.R. Civ.P. 12(c); *Flora v. Home Federal Savings and Loan Association,* 685 F.2d 209, 211 (7th Cir.1982). When determining whether an issue of fact exists, uncontested allegations to which the moving party had an opportunity to respond are taken as true. *Flora,* 685 F.2d at 211.

Plaintiffs and defendants assert, and this court finds, that there is no genuine issue as to any material fact in this action. *See* Plaintiff's Motion for Summary Judgment at 2; Defendant CUB's Statement of Genuine Issues at 2; Government Defendants' Motion for Judgment on the Pleadings at 3. The parties have presented to the court only one issue of law: whether Sections 9 and 10 of the CUB Act are unconstitutional in light of *Pacific Gas.* The court now holds that Sections 9 and 10 of the CUB Act do not differ from the CPUC access order in a constitutionally significant manner. As did the CPUC order, the CUB Act establishes a forced access rule that "both penalizes the expression of particular points of view and forces speakers to alter their speech to conform to an agenda they do not set." *Pacific Gas,* 106 S.Ct. at 908. The court therefore grants plaintiff's motion for summary judgment and denies defendants' motion for judgment on the pleadings.

## A. Sections 9 and 10 of the CUB Act Impermissibly Chill Plaintiffs' Expression of Particular Points of View or Discussion of Certain Issues

As set out above, the *Pacific Gas* plurality found that the CPUC order chilled Pacific Gas' speech because the order granted access to a speaker which disagreed with Pacific Gas' views; therefore, Pacific Gas had to contend with the fact that its discussion of an issue might meet with a hostile response, which it would

7. Justices Rehnquist and Stevens wrote dissenting opinions in *Pacific Gas.* In his dissent, Justice Rehnquist found the case governed by *PruneYard,* and opined that negative free speech rights, applicable to individuals and perhaps the print media, should not likewise be extended to corporations generally. *Pacific Gas,* 106 S.Ct. at 917–22. Justice Stevens found the CPUC's requirement constitutionally similar to regulations applied daily to a variety of commercial communications that have never been invalidated on First Amendment grounds. *Id.* at 922–24.

One court has already followed *Pacific Gas.* In *Consolidated Edison v. Public Service Commission of New York,* 119 A.D. 2d 850, 500 N.Y.S.2d 423 (N.Y.App.Div.1986), the court declared unconstitutional the Public Service Commission's requirement that Consolidated Edison include inserts from consumer groups in its billing envelopes. The court found its case "virtually identical" to *Pacific Gas* and therefore found *Pacific Gas* dispositive of the First Amendment issue.

have to disseminate. It therefore might refrain from any discussion at all in order to avoid controversy. *Id.* at 910.

Defendants contend that there is no such chilling effect in the present case. According to defendants, unlike the CPUC order, the CUB Act does not grant access on the basis of the viewpoint of the speaker, but on the basis of the status of the speaker. Defendants point out that one of the purposes of the CPUC order, to offer the public a greater variety of views, is not present in Section 9 of the CUB Act. CUB was granted access not because it disagrees with the utilities' views, but simply because of its status as the representative of residential ratepayers. Therefore, the plaintiff utilities do not have to contend with the risk of inviting a hostile response, as Pacific Gas did.

Defendants' argument flies in the face of the *Pacific Gas* plurality opinion, CUB's conduct under the CUB Act to date, and common sense. The plurality's discussion of the purposes behind the CPUC order, and the reason why the CPUC chose to grant access to TURN, makes clear that Section 9 of the CUB Act, like the CPUC order, grants access on the basis of viewpoint. The *Pacific Gas* plurality identified two purposes behind the CPUC access order: To provide a variety of views and "to assist groups ... that challenge [Pacific Gas] in ratemaking proceedings in raising funds." *Id.* at 910. Both of these purposes demonstrate that the CPUC order granted access based on viewpoint, the plurality found:

> The variety of views that the [CPUC] seeks to foster cannot be obtained by including speakers whose speech agrees with [Pacific Gas']. *Similarly, the perceived need to raise funds to finance participation in ratemaking proceedings exists only where the relevant*

> *groups represent interests that diverge from [Pacific Gas'] interests.*

*Id.* at 910 (emphasis added). One of the purposes, if not the major purpose, behind the access order in Section 9 of the CUB Act is to assist CUB, a group that represents utility consumers in ratemaking and other proceedings, in raising funds. *See* Ill.Rev.Code ch. 111⅔, ¶¶ 905(1), 905(2)(c)–(g), 909(1)(c). As in *Pacific Gas*, CUB's perceived need to raise funds to finance its participation in ratemaking and other proceedings exists only because it represents interests that diverge from plaintiffs' interests.

The plurality also discussed the reason the CPUC chose to grant access to TURN in particular:

> TURN, the only entity to receive access to [Pacific Gas'] billing envelope, purports to represent the interest of a group of [Pacific Gas'] customers: residential ratepayers.... *The [CPUC's] opinion plausibly assumes that the interest of residential ratepayers will often conflict with [Pacific Gas'] interest.*

*Pacific Gas,* 106 S.Ct. at 910 n. 9 (citations omitted) (emphasis added). As did the CPUC, the Illinois legislature chose to grant CUB access to plaintiffs' utility bills because CUB represents the interest of residential utility consumers. This court may "plausibly assume" that the interest CUB represents "will often conflict" with plaintiffs' interest. In other words, the court may plausibly assume an organization's general viewpoint, given its "status" as the representative of certain interests.[8] The Illinois legislature created CUB to represent a certain interest, to have a certain viewpoint; CUB's "status" and "viewpoint" are inseparable.

In fact, the interest CUB represents has often conflicted with plaintiffs' interest. A review of the enclosures plaintiffs have had

---

**8.** Defendants argue that *Buckley* and *Regan* establish that restrictions based on the status of the speaker, rather than the speaker's viewpoint, do not contravene the First Amendment. However, *Buckley* and *Regan* did not involve status-based restrictions, but "content-neutral subsidies." *Pacific Gas,* 106 S.Ct. at 911. The crucial difference between *Regan* and *Buckley,* and *Pa-*

*cific Gas* and the present case, is that the government in *Pacific Gas* and the present case did not choose to subsidize a speaker, but chose a speaker, based on the identity of the interests that the speaker represents, and forced the speaker's opponent—not the taxpaying public—to assist in dissemination of the speaker's message. *Id.*

to disseminate under the CUB Act reveals that CUB has challenged, and will continue to challenge, proposed utility rate increases, and CUB has, in opposition to the utilities, proposed and lobbied for legislation changing the way utilities are regulated and rates are set. *See* Exhibit "B" to Plaintiffs' Complaint.

The court therefore finds that, as the CPUC order granted access to TURN based on viewpoint, so too the CUB Act grants access to CUB on the basis of CUB's viewpoint. The CUB Act awards access only to CUB, a group whose interests are hostile to plaintiffs' interests. Plaintiffs must therefore contend, as did Pacific Gas, with the possibility of having to disseminate a hostile response, should it express a certain viewpoint or discuss a certain issue. Faced with these circumstances, plaintiffs might well conclude that the safe course is to avoid controversy, reducing the free flow of information and ideas the First Amendment seeks to promote. *Pacific Gas*, 106 S.Ct. at 910.

**B. Sections 9 and 10 of the CUB Act Impermissibly Force Plaintiffs to Associate with Speech With Which They May Disagree**

█ As previously discussed, the *Pacific Gas* plurality found that the CPUC's access order left TURN free to use Pacific Gas' envelopes to discuss any issue it chose to discuss; therefore, TURN might express a view hostile to Pacific Gas' interest, and Pacific Gas would feel compelled to respond or to appear to agree with TURN's view. *Id.* at 912. The danger that a corporate speaker will be forced to alter its own message as a result of the government's coercive action is "a danger that the government may not impose absent a compelling interest." *Id.*

Defendants argue that Sections 9 and 10 of the CUB Act do not leave CUB free to use plaintiffs' billing envelopes to discuss any issue it chooses to discuss. Rather, Section 9(1)(c) of the CUB Act limits CUB enclosures to informing ratepayers of CUB's "purpose, nature and activities," and informing ratepayers that they may become members of CUB, maintain membership in CUB and contribute money to CUB directly. According to defendants, Section 9(1)(c) prohibits CUB from disseminating all but purely informational speech in its enclosures. Therefore, CUB may not express, and plaintiffs will not be forced to respond to, a viewpoint hostile to plaintiffs. In short, defendants argue that the CUB Act's forced access provision resembles a state-imposed informational disclosure requirement, such as that upheld in *Zauderer*, rather than a government order compelling a corporate speaker to grant access to a hostile or potentially hostile third party.

Again, defendants ignore the *Pacific Gas* plurality opinion and CUB's practice under the act to date. In his dissent, Justice Stevens points out that the CPUC order limited TURN's inserts to (1) explaining TURN's program; (2) listing Pacific Gas' pending and anticipated applications, and other cases likely to have a significant effect on ratepayers' rates and services; and (3) inviting voluntary donations to support TURN's advocacy on behalf of residential ratepayers before the CPUC. *Pacific Gas*, 106 S.Ct. at 923 (Stevens, J., dissenting). According to Justice Stevens, the CPUC's order therefore did not sanction a "free-wheeling political debate," nor did it create "the postal equivalent of the soap box in the park." *Id.* Justice Stevens concluded:

> I assume that the plurality would not object to a utility commission rule dictating the format of the bill, even as to required warnings and the type size of various provisos and disclaimers.... Such regulation is not too different from that applicable to credit card bills, loan forms, and media advertising.... I assume also the plurality would permit the Commission to require the utility to disseminate legal notices of public hearings and ratemaking proceedings written by it.... These compelled statements differ little from mandating disclosure of information in the bills itself, as the plurality recognizes.

*Id.* at 923–24 (Stevens, J., dissenting) (citations and footnotes omitted).

The plurality noted the CPUC order's "limits" on TURN's inserts in response to Justice Stevens' dissent:

Nor does the fact that TURN will use the envelopes to make fundraising appeals lessen the burden on appellant's speech. *Cf. post*, at —— (STEVENS, J., dissenting). The Commission has "disavowed any intention of looking at the way that TURN solicits funds," leaving TURN free to "speak and advocate its own position as best it can" in its billing envelope inserts. . . . Thus, while TURN's advocacy may be aimed at convincing ratepayers to make donations, that goal does not alter the open-ended nature of the access awarded in this case, because it does not restrict the scope or content of TURN's message.

*Id.* at 910 n. 9 (citations omitted). Similarly, the goal of CUB's inserts, as expressed in Section 9(1)(c) of the CUB Act, does not alter the open-ended nature of the access awarded to CUB. CUB may "inform" ratepayers of its "purpose, nature and activities," and may solicit membership. The ICC must approve CUB inserts unless they are false or misleading or they do not satisfy the requirements of the CUB Act. This court does not agree with defendants' assertion that these provisions limit CUB to purely informational inserts. These provisions do not specify the manner in which CUB may "inform" ratepayers of its purpose, nature and activities, leaving CUB virtually free to advocate its position on utility issues. Indeed, CUB would be hard pressed to describe, except in the most general manner, its purpose, nature and

activities without expressing any of its views on utility issues.[9]

CUB inserts that plaintiffs have had to disseminate belie defendants' claim that CUB is limited to purely informational speech in its inserts. *See supra* at p. 4; Exhibit "B" to Plaintiffs' Complaint. Surely, a statement that a utility bill is "too high," or that it "may be hazardous to [a ratepayer's] budget," is not "purely informational," but biased, even hostile. Moreover, requiring CUB inserts in billing envelopes results in the CUB message reaching ratepayers just at the time when they are most susceptible to an anti-utility message.

*Zauderer* presented a completely different factual situation. There, the State required attorneys to include in their advertisements purely factual and uncontroversial information concerning the attorney's contingent fee arrangement. *Zauderer*, 105 S.Ct. at 2282. The Court upheld this restriction on commercial speech, finding it reasonably related to the State's interest in preventing deceptive advertising. Unlike in *Zauderer*, the Illinois legislature is not requiring utilities to simply include with their bills a statement that there is a group ratepayers may join which will represent their interests in different fora;[10] rather, here the Illinois legislature is requiring the utilities to permit access to a non-governmental[11] third party, CUB, so that CUB may inform ratepayers of its purpose, nature and activities and may solicit membership.

**9.** Defendants contend that this court could construe the CUB Act as authorizing only purely informational enclosures. Therefore, the court should not find Section 9, and Section 10 as applied to Section 9, facially unconstitutional.

Plaintiffs respond that such a construction would amount to judicial lawmaking. Plaintiffs point out that Section 19 of the CUB Act instructs that the Act "shall be liberally construed to effect its purposes." Plaintiffs also point out that, on another occasion, CUB itself argued that the CUB Act does not restrict the scope and content of its enclosures. *See* Exhibit "A" to Plaintiffs' Reply.

This court will not rewrite the CUB Act under the guise of construction and interpretation. Section 9 of the CUB Act clearly sweeps within its access requirement both ideological and non-ideological enclosures. The "purpose, nature

and activities" language in Section 9(1)(c) simply fails to provide a meaningful limit on the scope of CUB's enclosures. In *Pacific Gas*, 106 S.Ct. at 923, Justice Stevens proposed the same remedy by construction, which the plurality rejected. This court now declines to rewrite Section 9 of the CUB Act, and finds Section 9, and Section 10 as applied to Section 9, unconstitutional.

**10.** The court expresses no opinion as to whether such a requirement would withstand constitutional scrutiny.

**11.** Government defendants assert that, under Section 4 of the CUB Act, CUB is a government, rather than a private, speaker. Therefore, any CUB insert is a permissible informational message from the State. Interestingly, CUB does

Certainly, there was some chilling effect in *Zauderer:* attorneys who might otherwise advertise their services might not, if required to explain their contingent fee arrangement. However, the chilling effect in the present case is much more extensive. Here, unlike in *Zauderer*, the utilities cannot predict the content of the messages they will have to disseminate; the CUB Act does not limit CUB to one specific factual message, but allows CUB to present any number of messages, including controversial and biased messages. Also, the speech the CUB Act chills is not only commercial, but also political, speech. As demonstrated in *Pacific Gas*, utilities do not merely advertise their services in their billing envelopes. *Pacific Gas*, 106 S.Ct. at 907–08. Utilities are free to, and do, discuss controversial issues in their billing envelopes. *Consolidated Edison Co. v. Public Service Commission of New York*, 447 U.S. 530, 100 S.Ct. 2326, 65 L.Ed.2d 319 (1980). In addition, *Zauderer* did not involve a problem of forced association as does the present case. This court therefore concludes, as did the *Pacific Gas* plurality, that, while *Zauderer* recognizes that states have substantial leeway in requiring businesses to disclose appropriate information, *Zauderer* does not hold that a state is free to require corporations to carry the messages of third parties, where the messages are biased against or contrary to the corporations' views. *Pacific Gas*, 106 S.Ct. at 911 n. 12.

### C. Sections 9 and 10 of the CUB Act Do Not Constitute a Narrowly Tailored Means of Serving a Compelling State Interest or a Reasonable Time, Place or Manner Regulation

■ For the reasons stated succinctly in *Pacific Gas*, 106 S.Ct. at 913–14, the court finds that Sections 9 and 10 of the CUB Act do not constitute a narrowly tailored means of serving a compelling State interest, or a reasonable time, place or manner regulation. The court notes, and defendants concede, that a plea for funding enclosed in a utility's billing envelope may be one of the "best" methods for raising funds. *See* CUB's Memorandum in Support of Motion for Judgment on the Pleadings at 18 ("By accompanying the utility bills, the enclosures reach their audience at a time when readers are acutely aware of the need for representation by an entity such as CUB."). However, Illinois may not require that the "best" means of serving an interest in utility regulation be employed, without regard to plaintiffs' First Amendment rights, and Illinois may, in fact, serve that interest through means that would not violate plaintiffs' First Amendment rights. *Pacific Gas*, 106 S.Ct. at 913–14.

### III. Conclusion

For the reasons stated above, the court finds that Sections 9 and 10 violate plaintiffs' First Amendment rights. The court therefore grants plaintiffs' motion for summary judgment and denies defendants' motion for judgment on the pleadings.

---

not consider itself to be a Government speaker. *See* Exhibit "B" to Plaintiffs' Complaint at 4 ("CUB is not a governmental agency."). Also, although Section 4 of the CUB Act defines CUB as a "nonprofit public body corporate and politic," the Act does not authorize CUB to engage in any regulatory or adjudicative functions, nor does the Act authorize CUB to receive tax dollars. It is not a state agency. In any event, the

Supreme Court made clear in *Wooley v. Maynard*, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977), that a State may not require an individual to disseminate *the State's* ideological message. The CUB Act allows CUB, whether it be a government or private speaker, to disseminate ideological and controversial views in plaintiffs' billing envelopes. The court therefore finds the Act unconstitutional.